UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN PATTERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| INDIANAPOLIS METROPOLITAN | ) |
| POLICE OFFICER RUSSELL BURNS, | )   CASE NO. 1:08-cv-0525-DFH-TAB |
| in his individual capacity, | ) |
| INDIANAPOLIS METROPOLITAN | ) |
| POLICE DEPARTMENT and | ) |
| CITY OF INDIANAPOLIS, | ) |
| | ) |
| Defendants. | ) |

ENTRY ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Kevin Patterson has sued Indianapolis Metropolitan Police Officer

Sergeant Russell Burns, the Indianapolis Metropolitan Police Department

("IMPD"), and the City of Indianapolis for false arrest and detention and malicious

prosecution in violation of his Fourth Amendment rights.  Plaintiff has sued under

42 U.S.C. § 1983, which offers relief for violations of constitutional rights by

persons acting under the color of state law.  Patterson claims that Sergeant Burns

failed to act upon knowledge of exculpatory evidence and that the IMPD and the

City maintained an unconstitutional practice, policy, or custom.  Defendants have

moved for summary judgment on all claims.   For the following reasons,

defendants' motion is granted as to defendants IMPD and City of Indianapolis and denied as to defendant Burns.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when there are no genuine issues of material fact, leaving the moving parties entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

A factual issue is material if its resolution might change the suit's outcome under the governing law. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. See *id*. In deciding a motion for summary judgment, a court may not assess the credibility of witnesses, choose between competing inferences, or balance the relative weight of conflicting evidence; the court must view all the evidence in the record in the light reasonably most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 249-50. For the non-moving party to survive summary judgment, "all that is required is that sufficient evidence

supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).

*Facts for Summary Judgment*

The following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to the non-moving party, plaintiff Kevin Patterson. See *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

Patterson was an adult guard (or "youth manager") at the Marion County Juvenile Detention Center from February 2004 to May 2005. Defendant Sergeant Russell Burns has been employed by the IMPD and its predecessor agency, the Indianapolis Police Department, since 1987. From November 2005 to May 2006, Sergeant Burns was a detective in the police department's sex crimes unit. His duties included investigating allegations of sexual criminal conduct such as rape, child molestation, and other sexual misconduct with minor children.

In November 2005, Burns was assigned to investigate allegations of sexual misconduct at the Juvenile Detention Center between a youth manager and a juvenile detainee with the initials J.S. Later in November, Burns and a

representative from the Indiana Department of Child Services ("DCS") took a taped statement from J.S.   In that statement, J.S. made allegations of sexual relationships between her and two adult male youth managers at the Detention Center, and she identified other similar behavior between other detainees and youth managers.  Burns Aff. ¶¶ 5-13.

In November and December 2005, the investigation rapidly expanded as Sergeant Burns received allegations of sexual misconduct by multiple individuals with multiple victims.   From November 2, 2005 to January 9, 2006, Burns conducted at least nine more interviews with juvenile detainees and four interviews with adult Detention Center personnel.   One interview was with a female juvenile detainee identified as T.L.  T.L. described sexual encounters with two youth managers, including a "Mr. Patterson."  Though T.L. did not provide a first name for "Patterson," she identified him by occupation and gave a physical description.  T.L. alleged that she had sexual intercourse with "Patterson" in the Detention Center kitchen.   On January 11, 2006, Burns interviewed the other youth manager identified by T.L., and he who denied both knowing and having sex with T.L.  Sergeant Burns did not interview Kevin Patterson.  Burns Aff. ¶¶ 14-37.

Meanwhile, the Department of Child Services was performing a concurrent investigation of the Detention Center allegations.  Shamika Morales, a DCS case manager, was assigned to investigate T.L.'s allegations.   Her duties in the investigation included obtaining information from the IPD.  Her primary contact

at the IPD for this purpose was Sergeant Burns.  Morales Decl. ¶¶ 3-5.  Sometime

no later than April 29, 2006, Morales completed a Preliminary Report of Alleged

Institutional Child Abuse or Neglect (known as a "310 Report") identifying T.L. as

the alleged victim and Patterson and another named youth manager as the alleged

perpetrators.  Morales Decl. ¶ 7; Morales Dep. 4; Morales Decl. Attachment A, 1.

The key evidence on the current claims against Sergeant Burns comes from

Morales.  Also on or before April 29, 2006, Morales completed an Investigation of

Child Abuse or Neglect (or "311 Report") in which she wrote:  "Morales received

call from IPD Sgt. Burns stating that he interviewed [T.L.] and that she denied

allegations . . . . also told that investigation is now being handled by grand jury."[1]

Morales Dep. 7; Def. Ex. A at 2-4.  Morales reaffirmed this assertion in both her

deposition given as part of the criminal prosecution of Patterson and her affidavit

submitted in this case (which also adopted her deposition testimony).  Morales

Decl. ¶ 7; Morales Dep. 6-7.  Morales testified that she did not know exactly when

Burns contacted her but that it was no later than April 29, 2006.  Morales Decl.

¶ 8.  There are no further details of the conversation between Burns and Morales.

She has no recollection of it, and all supporting information in the DCS records

has been expunged.  Morales Dep. 5-8.

---

[1]Though both reports indicate a completion date of January 12, 2006, Ms.
Morales testified that January 12th was the beginning of her investigation, and
that the reports were actually completed no later than April 29, 2006.  Morales
Decl. ¶ 8.

By late January 2006, the scope of the investigation into sexual misconduct at the Juvenile Detention Center had grown beyond what one detective could handle.  In late January 2006, Sergeant Burns turned over the investigation to the Grand Jury Division of the Marion County Prosecutor's office.  The Grand Jury Division consisted of several deputy prosecutors and detectives.  That team focused on investigations that took greater time, resources, and manpower than were available to other divisions of the IPD.  Burns turned over all of his investigation materials, including taped statements, interviews, notes, and documents.  Thereafter, the Grand Jury Division assumed complete control of the investigation.  Sergeant Burns was not assigned any new duties to investigate the allegations of misconduct at the Detention Center.  Burns Aff. ¶¶ 40-51; Thayer Aff. ¶¶ 5-13, 19-20.

Led by Sergeant Mark Thayer, the Grand Jury Division restarted the investigation.  Sergeant Thayer ordered his investigators to "re-do" everything Sergeant Burns had done to ensure that the investigation was done thoroughly.  Thayer Aff. ¶¶ 14-15.  This work included another interview of T.L., performed on February 2, 2006 by Detective Shani Anderson of the Marion County Sheriff's Department.  Thayer Aff. ¶ 17; Anderson Aff. ¶ 12.  In this interview, T.L. again stated that she had sexual intercourse with both the other named youth manager and "Mr. Patterson."  Anderson Aff. ¶ 14.  T.L. also alleged that "Mr. Patterson" visited her at home while off duty.  T.L. Statement of 2/2/06, 160-63.

After the interview, Detective Anderson reviewed records seized from the Detention Center.  The records revealed that plaintiff Kevin Patterson was the only male Detention Center employee whose times and locations matched those of T.L., so Detective Anderson identified Kevin Patterson as the employee T.L. had described.  Detective Anderson believed T.L. to be credible due to the specificity of her statements and the corroboration of the records.  Anderson Aff. ¶¶ 29-36.

On or about April 24, 2006, the Grand Jury Division swore out several probable cause affidavits against Detention Center employees, including one against plaintiff Kevin Patterson.  Anderson Aff. ¶¶ 38-40; P.C. Aff. 1-10.  Prior to that date, T.L. had not recanted her allegations in any communications she had with the Grand Jury Division.  Anderson Aff. ¶¶ 43, 55.  After the affidavit was filed, the Marion Superior Court issued a warrant for Kevin Patterson's arrest.  Detective Anderson executed the arrest warrant on April 25, 2006.  The charging information listed eight counts of criminal conduct against Patterson, including sexual misconduct with a minor, sexual misconduct, child solicitation, and official misconduct.  P.C. Aff. 4-10.

A year later, on May 25, 2007, T.L. gave a deposition in the criminal case against Patterson.  T.L. Aff. ¶¶ 9-10.  In that deposition, T.L. recanted her allegations against both Patterson and the other youth manager she had named.  She explained that at the time she had made the accusations, she had been taking medication for bipolar disorder, schizophrenia, and sleeping problems.  She

stated that the medicine had caused her to make the statements and to forget doing so.  T.L. Dep. 5-9.

On June 8, 2007, the State of Indiana dismissed all criminal charges against Kevin Patterson.  Additional facts are noted below as needed, keeping in mind the standard for summary judgment.

### *Discussion*

Mr. Patterson brought this civil action pursuant to 42 U.S.C. § 1983 against Sergeant Burns, the IMPD, and the City of Indianapolis. All defendants seek summary judgment on all claims against them.

I.      *The IMPD and the City of Indianapolis*

Both the IMPD and the City are entitled to summary judgment because Patterson has offered no evidence of constitutional violations resulting from the enforcement or execution of an express policy, practice, or custom of either entity. A governmental unit may not be held liable under section 1983 simply because one of its non-policymaking employees violated a person's constitutional rights. For such an entity to be liable, the deprivation must have resulted from the enforcement of an express policy or an implicit custom adopted by the governmental unit.  *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690-91 (1978).  Patterson has failed to identify a policy or custom supporting his

claim, and therefore summary judgment must be granted for the IMPD and the City.[2]

Patterson argues that there is a custom or policy of failing to ensure that a formal interview takes place when an IMPD detective turns over a case to the Grand Jury Division.  He argues that this custom or policy caused the violation of his constitutional rights.  Patterson asserts that because Sergeant Thayer's affidavit makes no reference to a formal transfer interview, the court should infer that none occurred.  Therefore, the argument goes, the lack of an interview in this one instance "appears to" be part of a policy and custom that these interviews do not take place.  Pl. Br. 9.

This argument fails on both the law and the facts.  Sergeant Thayer's undisputed affidavit describes the very transfer interview that Patterson contends never occurred.  Thayer stated that in late January, Burns "brought [the] allegations to the Grand Jury Division by discussing them with [him] and Barbara Crawford, the supervising deputy prosecuting attorney of the Grand Jury Division," and that the Division then assumed control of the case.  Thayer Aff. ¶¶ 8-9, 13.  Patterson also overlooks Sergeant Burns' affidavit, which states that "in late January 2006, [Sergeant Burns] briefed the members of the Grand Jury Division, including Crawford and Sgt. Thayer, on [his] investigation to that point,"

---

[2]The IMPD is also entitled to summary judgment because it is not a legal entity separate from the City itself.  See *West v. Waymire*, 114 F.3d 646, 646-47 (7th Cir. 1997).

and that the Division thereafter took over the case.  Burns Aff. ¶¶ 47-49.  Since no evidence before the court supports the assertion that no transfer interview occurred, Patterson's theory cannot survive summary judgment.  See *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. at 290 (1968) (a claim cannot survive a motion for summary judgment without "any significant probative evidence tending to support the complaint").

Even if Patterson had factual support for his assertion, he bases his case on only a single incident, which would still be insufficient to substantiate a claim for an unconstitutional custom or policy.  Claims resting on omissions in policies, such as the present one, "require[ ] more evidence than a single incident to establish liability."  *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005), citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985).  Patterson has not identified any other instances of case transfers to the Grand Jury Division with similar asserted problems.  More fundamental, it is not at all clear how even the hypothetical custom or policy about transfer interviews would foreseeably lead to constitutional violations.   In any event, without evidence of other similar incidents, Patterson could not show an unconstitutional policy, custom, or practice.  The IMPD and the City are entitled to summary judgment on all claims against them.

II.     *Sergeant Burns*

Genuine issues of material fact require denial of summary judgment on the claims against Sergeant Burns.  Patterson has established a factual dispute by providing both testimonial and documentary evidence that T.L. recanted to Sergeant Burns before the Grand Jury Division filed the probable cause affidavit against Patterson and had him arrested.  Sergeant Burns argues that he is entitled to qualified immunity, that he was not personally involved in any constitutional violation, and that any evidence demonstrating a dispute of material fact is inadmissible.  These arguments do not require summary judgment in favor of Sergeant Burns.

A.    *Admissibility of Evidence*

Patterson's claims against Burns are all built on the theory that, before Patterson was charged and arrested, T.L. had told Burns that her earlier accusations against Patterson were false.  Sergeant Burns argues that he is entitled to summary judgment because Patterson's supporting evidence is inadmissible.  Burns argues that the 311 Report, T.L.'s deposition, and Morales' deposition are all inadmissible hearsay.

In deciding a motion for summary judgment, the court must consider only evidence that would be admissible at trial.  *Gustovich v. AT&T Communications, Inc.*, 972 F.2d 845, 849 (7th Cir. 1992); see also Fed. R. Civ. P. 56(e).  This evidence need not be in exactly the same form that would be admissible at trial.

Affidavits ordinarily are not admissible at trial, for example, but an affidavit from a witness who can testify at trial is routinely admissible for purposes of summary judgment. See *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Every subsection of Rule 56 assumes that affidavits are admissible for summary judgment. The same reasoning applies to deposition testimony, regardless of whether the deposition testimony could be used directly at trial (other than for purposes of impeachment) under Rule 32 and the Federal Rules of Evidence. When a court examines an affidavit or deposition supporting or opposing summary judgment, it is useful to ask whether the same testimony would be admissible if the witness were in the witness chair at trial.

Hearsay – a prior statement offered in evidence to prove the truth of the matter asserted – is inadmissible in content and therefore cannot, in the face of a proper objection, provide the basis for supporting or opposing summary judgment. See Fed. R. Evid. 801(c) (defining hearsay); *Winskunas*, 23 F.3d at 1268 (affirming summary judgment where plaintiff relied on inadmissible hearsay to oppose it). Excluded from the bar on hearsay are admissions of a party opponent and statements offered for purposes other than to prove the truth of their content. Fed. R. Evid. 801(c)-(d).

      1.     *The 311 Report*

The entry in the 311 Report that describes T.L.'s recantation is admissible non-hearsay.  Since this entry encapsulates three separate levels of statements, the court must examine it at three levels to determine its admissibility.  The first level is the statement's origin:  T.L. purportedly telling Sergeant Burns that her accusations against Patterson were false.  This level is not hearsay because it is offered not to prove the statement's truth (that T.L. never had sexual contact with Patterson) but to show that T.L. made the statement to Burns that exculpated Patterson.  Whether Patterson actually had sexual contact with T.L. is not critical at this point (and in the wake of her recantation, the parties do not dispute that issue).  For purposes of Patterson's claims against Burns, the contest is over whether T.L. told Sergeant Burns that she was recanting her accusations.  Statements offered not for their truth but simply to show that they were made *and heard by the listener* are not hearsay and are therefore admissible.  Fed. R. Evid. 801(c); *Martinez v. McCaughtry*, 951 F.2d 130, 133 (7th Cir. 1991).

The second level of potential hearsay is Burns' purported statement to Morales that T.L. had told him that she was recanting her accusations against Patterson.  Since Burns is both the declarant and the party opposing the evidence, this statement is an admission of a party opponent and is thus admissible non-hearsay.  Fed. R. Evid. 801(d)(2).

The third level of the 311 Report is Morales' written entry of Burns' report of the purported recantation in the 311 Report.  At this point, the court need not

decide whether the 311 Report itself is admissible under the business record or public record exceptions to the hearsay rule.  See Fed. R. Evid. 803(6) & (8). Morales adopted her 311 Report entry in her affidavit and deposition testimony, so it is admissible at least through her testimony.  By adopting the contents of her report in her affidavit, Morales made its contents her testimony, independent of whether the document itself might otherwise be admissible by itself.  See Fed. R. Evid. 801(d)(1), Notes of Advisory Committee on Proposed Rules ("If the witness admits on the stand that he made the statement and that it was true, he adopts the statement and there is no hearsay problem."); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1274-75 (7th Cir. 1984) (affirming admission of prior unsworn statement by witness who adopted it while testifying at trial, but cautioning against "wholesale" use of the technique at trial).[3]

Burns attacks the credibility of Morales' testimony adopting her report and deposition testimony, arguing that she was not sufficiently certain about her testimony.  Plaintiff is required to prove his case by only a preponderance of the evidence.  These attacks on credibility simply cannot be resolved as a matter of law on summary judgment.

---

[3]*Bell* was later overruled in part on another issue, whether parents of an adult son had a constitutional liberty interest in their relationships with their son who was killed by police officers.  *Russ v. Watts*, 414 F.3d 783, 783-84 (7th Cir. 2005).

Burns also argues that Morales' testimony that Burns reported to her that T.L. had recanted her accusations amounts to improper impeachment testimony, which Burns argues is not sufficient to avoid summary judgment.  Def. Reply Br. 6-7, quoting *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir. 1998). This argument is curious.  If one driver moves for summary judgment based on his testimony that he had a green light, the other driver can oppose summary judgment with an affidavit from another witness saying that the light was red. That contradiction presents a genuine issue of fact, not merely collateral impeachment of a witness' credibility, which was the question addressed in *Dugan*.  Sergeant Burns contends that T.L. never recanted until her deposition testimony in the criminal case.  Plaintiff offers evidence to the contrary, that she recanted to Burns and that Burns reported this fact to Morales at the time.  That conflicting evidence presents a genuine issue of material fact.

>    2.    *Deposition Testimony*

The depositions of T.L. and Morales pose different problems.  Those depositions were taken in the criminal case to which Sergeant Burns was not a party.  The use of deposition testimony for summary judgment ordinarily is limited to deposition testimony taken in the pending case so that all parties had an opportunity to be present and to question the witness.[4]  The court cannot treat

---

[4]Rule 32(a)(8) of the Federal Rules of Civil Procedure also provides for use of depositions taken in earlier actions  involving the same subject matter between the same parties or their representatives or successors in interest.

Burns, one of the investigating officers, as if he were a party to the criminal prosecution by the state.  See *Hannah v. City of Overland*, 795 F.2d 1385, 1390-91 (8th Cir. 1986) (deposition of witness taken during criminal prosecution could not be used against police officer in civil case; officer was not party to criminal prosecution and had no opportunity or motive to cross-examine witness during deposition); *Butler v. Indianapolis Metropolitan Police Dep't*, 2009 WL 2092416, *1-2 (S.D. Ind. July 13, 2009) (holding that deposition of witness taken in criminal prosecution could not be used against police officer in civil case).

Plaintiff has not offered a basis for admitting the T.L. deposition testimony for purposes of summary judgment.  Plaintiff states that he anticipates that T.L. will be available to testify at trial.  If she is, and if she testifies differently than she testified in the deposition, the deposition could be used as a prior inconsistent statement.  But that prospect does not solve the admissibility problem at the summary judgment stage.

The Morales deposition would pose the same problem, except that Morales has submitted an affidavit in this case adopting her testimony from the criminal deposition.  That is an acceptable method for presenting affidavit testimony.  It would have been possible for Morales to sign an affidavit that repeated in every particular her deposition testimony from the criminal case.  Such a long and detailed affidavit would be entirely proper to support or oppose a motion for summary judgment.  The shorter version offered here, in which Morales swore

that she had reviewed her deposition testimony, that it was accurately transcribed, and that it is true and accurate, is also proper and effectively makes her entire deposition testimony available for use in opposing summary judgment in this civil case.

B.   *Qualified Immunity*

Because the plaintiff's evidence from Morales is admissible for purposes of summary judgment, the court must assume that T.L. told Sergeant Burns she was recanting her accusations against Patterson and that Burns did nothing with that information.  Burns argues that he is entitled to qualified immunity because even if T.L. did recant to him, he could have reasonably declined to disclose that information to the Grand Jury Division and relied on the Division's detectives to uncover that same information during their investigation.  For the following reasons, such reliance would not be reasonable, at least as a matter of law, and Sergeant Burns is not entitled to qualified immunity.

A law enforcement officer or other government official acting in the course and scope of his duties is entitled to qualified immunity for discretionary acts if it would not be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  Though qualified immunity is a defense, once it is raised by the defendant it is the plaintiff's burden to overcome it.  *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir.

2008).  *Saucier* mandated a two-step process for resolving a qualified immunity defense.  The court must first consider whether the facts alleged show that the officer's conduct violated the plaintiff's constitutional rights.  If so, the second question is whether the right was clearly established in light of the specific context of the case so that a reasonable official would have understood that his conduct would violate the right.  *Saucier*, 533 U.S. at 201.  More recently however, the Supreme Court has retreated from the two-step mandate and has held that courts may exercise discretion in deciding whether to skip the first step, such as in cases where it "is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."  *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).  In such cases, the *Pearson* Court correctly pointed out:  "District courts and courts of appeals with heavy caseloads are often understandably unenthusiastic about what may seem to be an essentially academic exercise."  *Id.*

In this situation, where the moving defendant relies on the defense of qualified immunity, the plaintiff "must show, on some level, that a violation of this right has been found in factually similar cases, or that the violation was so clear that a government official would have known that his actions violated the plaintiff's rights even in the absence of a factually similar case."  *Lee v. Young*, 533 F.3d 505, 512 (7th Cir. 2008).  The Seventh Circuit has often recognized that the Fourth Amendment protects against false arrest and malicious prosecution where a police officer withholds information or provides false information that is relevant to a prosecutor's probable cause inquiry.  See, *e.g.*, *Acevedo v.*

*Canterbury*, 457 F.3d 721, 723 (7th Cir. 2006) (reversing summary judgment in favor of police officer who provided false information to other officers, resulting in arrest); *Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001).  The Seventh Circuit has further held that the law has been clearly established for decades and that a defendant officer is not entitled to qualified immunity in such situations. See *Newsome v. McCabe*, 256 F.3d at 752-53 (affirming denial of qualified immunity where officers coached witnesses and concealed exculpatory witness identifications and fingerprint data); *Jones v. City of Chicago*, 856 F.2d 985, 994-96 (7th Cir. 1988) (affirming plaintiff's verdict; no qualified immunity where officers concealed exculpatory information and based probable cause determination on "worthless" witness identifications); *Overton v. Hicks*, 2008 WL 2518229, *12 (S.D. Ind. June 17, 2008) (no qualified immunity where officer intentionally withheld information that would have altered prosecutor's decision to pursue charges).  These cases bear sufficient factual similarities to the present one and show that any reasonable officer in Sergeant Burns' position should have recognized that withholding exculpatory evidence that the supposed victim of the supposed crime had recanted her accusations would violate Patterson's Fourth Amendment rights.

The court recognizes, as Sergeant Burns argues, that the Grand Jury Division took over the case from him.  The court also recognizes that Burns denies there was any recantation at all, but there is a factual dispute on that point and plaintiff receives the benefit of the conflicting evidence.  Plaintiff's evidence also

does not show precisely whether T.L.'s recantation took place before or after that transfer of responsibility.  For present purposes, two observations are in order.

First, applying the generous standard for summary judgment, it is reasonable to infer that this recantation probably took place (if it took place at all) while Sergeant Burns was still responsible for the case.  There is no apparent reason for Burns to have talked with T.L. after he had been reassigned.[5]  If this was indeed the case, the Division's subsequent assumption of control of the investigation would have no legal significance.  Sergeant Burns was charged with the duty of briefing the Division's investigators and deputy supervising prosecutor. Failing to disclose the alleged recantation here would constitute withholding critical evidence from those taking over responsibility for the case and for making the probable cause determination.

Second, even if the recantation took place (if it took place at all) after the transfer to the Grand Jury Division, the court is not prepared to say that Sergeant Burns would have had no clearly established duty to pass along that crucial exculpatory information to the prosecutors and detectives he knew were looking at the case.  See *Jones v. City of Chicago*, 856 F.2d at 991-93 (allowing claim against police laboratory technician who concealed exculpatory evidence she

---

[5]While this is one reasonable inference, it is not the only one.  Morales' 311 Report about the recantation suggests that Burns told Morales in the same conversation that the investigation was "now being handled by the [G]rand [J]ury" Division.  The court cannot determine as a matter of law whether the alleged recantation took place before or after the Grand Jury Division took over the case.

discovered after the investigation had been completed and probable cause determination had been made).   Sergeant Burns had been the principal investigating officer and had handed the case over to the Grand Jury Division.  If such significant  exculpatory evidence came to his attention later, by any means, he had a clear duty to pass it along to the officers handling the case.  Accordingly, Sergeant Burns is not entitled to qualified immunity for such conduct, if plaintiff can prove it actually occurred.[6]

     C.    *Personal Involvement*

---

[6]Nor is the court prepared to rule out liability if the alleged recantation took place after Patterson's arrest.  The evidence before the court allows a theoretical possibility that T.L.'s alleged recantation to Burns occurred in the narrow window after Patterson's arrest on April 25, 2006 and before Morales closed the 311 Report on April 29, 2006.  The timing could be significant because the validity of a malicious prosecution action under the Fourth Amendment is well established only prior to arraignment.  While it is clear that the due process clause of the Fourteenth Amendment protects against post-arraignment malicious prosecution, Patterson advances no due process argument.  The Seventh Circuit has left open, but has not squarely addressed, the validity of an action grounded in the Fourth Amendment for an official's acts after arraignment.  In *McCullah v. Gadert*, 344 F.3d 655, 660-61 (7th Cir. 2003), the court held that the Fourth Amendment at least protects against malicious prosecution before arraignment, but the court left the details of the claim open for the parties to develop on remand.  Specifically, the court found that "claims based on the [post-arrest] withholding of exculpatory information or the initiation of constitutionally infirm criminal proceedings [are] legal questions [that] are still open for exploration on remand . . . ." *Id.* at 661.  No record of the remand proceedings is readily available.  Given the appellate court's blessing to allow the district court to resolve the matter and the small likelihood that Burns acquired this information in the five-day window at issue, a grant of summary judgment would not be appropriate here.

Sergeant Burns argues that he cannot be liable under section 1983 because he had no personal involvement in Mr. Patterson's arrest and prosecution.  This argument is also unpersuasive, at least for purposes of summary judgment.

Liability under section 1983 requires a finding that the defendant caused the constitutional deprivation at issue, such that he was "personally involved or acquiesced in the alleged constitutional violation."  *Kelly v. Mun. Courts of Marion County*, 97 F.3d 902, 909 (7th Cir. 1996).  A claimant must establish a "causal connection[ ] or an affirmative link" between the defendant and the alleged conduct, *Wolf-Lillie v. Sondquist*, 699 F.2d 864, 869 (7th Cir. 1983), but need not show that the defendant directly participated in the violation, *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986).  A person acting under color of state law can be liable if he acts or fails to act in deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent.  *Id.*; *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).

Defendant Burns, relying on *Sheik-Abdi v. McClellan*, 37 F.3d 1240 (7th Cir. 1994), and *Maltby v. Winston*, 36 F.3d 548 (7th Cir. 1994), argues that he did not have the requisite level of personal involvement for liability because he did not participate in the arrest or probable cause determination.  Burns' attempt to analogize his situation with that of the paramedic defendant in *Sheik-Abdi* is not persuasive.  Sergeant Burns was not a paramedic with "no authority to intervene

. . . ."  *Sheik-Abdi*, 37 F.3d at 1243.  He was a police detective with a close relationship to the arresting officers in this case.  A detective's failure to reveal exculpatory evidence when he had the authority and the ability to prevent an unlawful arrest could constitute a "fail[ure] to act with a deliberate or reckless disregard of plaintiff's constitutional rights . . . ."  *Rascon*, 803 F.2d at 274.

Burns contends that he is like the *Maltby* defendant in that he "did not participate in the transaction, in the arrest, the preliminary hearing, or any part of the prosecution" of the plaintiff.  *Maltby*, 36 F.3d at 559.  Burns ignores the fact that he conducted a criminal investigation of plaintiff Patterson which, according to the facts the court must treat as true for now, yielded critical exculpatory evidence that he failed to disclose.  This is not a case in which there is "no evidence that [the defendant] had any knowledge that should have apprised him of the alleged constitutional deprivations."  Patterson has produced evidence from which a jury might, if it credits that evidence, find that Burns knowingly withheld exculpatory evidence in violation of Patterson's constitutional rights.  *Id.*  That finding would be sufficient to conclude that a constitutional deprivation occurred with Burns' knowledge and consent, and thus establish his personal involvement.  See *Rascon*, 803 F.2d at 274.  Sufficient evidence exists for a jury to hold Sergeant Burns liable for the alleged constitutional violations.  See *Maltby*, 36 F.3d at 559.

*Conclusion*

For the foregoing reasons, plaintiff Patterson has failed to support a viable claim that defendants IMPD and City of Indianapolis caused a violation of his constitutional rights.  Patterson has established a genuine factual dispute as to whether defendant Burns committed such a violation and whether Sergeant Burns is entitled to qualified immunity.  Accordingly, defendants' motion for summary judgment (Dkt. No. 34) is granted as to defendants IMPD and City of Indianapolis and denied as to defendant Burns.  The court will confer with the parties in the near future to schedule a new trial date.

So ordered.

Date: November 5, 2009

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ard@rucklaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jfk@rucklaw.com

Jonathan Lamont Mayes
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
jmayes@indygov.org

John C. Ruckelshaus
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jcr@rucklaw.com

Robert A. Schembs
ROBERT A. SCHEMBS
schembslaw@yahoo.com

Kathleen M. Sweeney
SCHEMBS SWEENEY LAW
ksween@gmail.com

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL, CITY OF INDIANAPOLIS
awill@indygov.org